John A. Snow (Nevada Bar #4133)
Gerald H. Suniville (Admitted PHV)
Scott M. Lilja (Admitted PHV)
Mary Jane E. Galvin-Wagg (Admitted PHV)
VAN COTT BAGLEY CORNWALL
    & MCCARTHY, P.C.
2300 W. Sahara Avenue, Suite 800
Las Vegas, NV 89102
Telephone:   702.436.0008
Facsimile:   801.534.0058

36 S. State Street, Ste. 1900
Salt Lake City, Utah 84111
Telephone:   801.532.3333
Facsimile:   801.534.0058
Email: jsnow@vancott.com, slilja@vancott.com
gsuniville@vancott.com, mwagg@vancott.com

*Attorneys for Lennard W. Stillman as Special Deputy Liquidator for Western Insurance Company in Liquidation*

ELECTRONICALLY FILED ON
October 8, 2013

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| ACCESS INSURANCE SERVICES, INC., a Nevada corporation,<br><br>Debtor. | Case No.: BK-N-11-52830-GWZ<br><br>Chapter 7 |
| JANET L. CHUBB, Chapter 7 Trustee for ACCESS INSURANCE SERVICES, INC., a Nevada corporation, and LENNARD W. STILLMAN, Special Deputy Liquidator of WESTERN INSURANCE COMPANY, a Utah Corporation,<br><br>Plaintiffs,<br>vs.<br><br>LG WARRANTY CO., LLC, an Ohio limited liability company, DALE HOLDING CO. OF COLUMBUS, LLC, an Ohio limited liability company, THOMAS P. HEILMAN II, CHRISTOPHER W. LUCAS, and SEAN M. GOUHIN,<br><br>Defendants. | **Adversary No.: BK-N-13-05034-GWZ**<br><br>**RESPONSE OF WESTERN INSURANCE COMPANY IN LIQUIDATION TO THE MOTION OF DEFENDANTS LG WARRANTY CO., LLC, DALE HOLDING CO. OF COLUMBUS, LLC, CHRISTOPHER W. LUCAS AND SEAN M. GOUHIN TO DISMISS CLAIMS OF LENNARD W. STILLMAN, SPECIAL DEPUTY LIQUIDATOR OF WESTERN INSURANCE COMPANY, FOR LACK OF SUBJECT MATTER JURISDICTION** |

Western Insurance Company, in liquidation, by and through Lennard W. Stillman, Special Deputy Liquidator ("Western") submits this Response to the Motion of Defendants LG Warranty Co., LLC, Dale Holding Co. of Columbus, LLC, Christopher W. Lucas and Sean M. Gouhin ("Defendants") to Dismiss Claims of Lennard W. Stillman, Special Deputy Liquidator of Western Insurance for Lack of Subject Matter Jurisdiction.

**SUMMARY OF RESPONSE**

Since 2006, Western and Access Insurance Services, Inc. ("Access"), acting as General Agent for Western, have had business dealings with LG Warranty and its owners Messrs. Lucas and Gouhin. Western and Access have bonded LG Warranty's automobile warranty programs and have loaned millions of dollars to LG Warranty, secured by real property owned by Dale Holding, another company owned by Messrs. Lucas and Gouhin. The claims asserted by Access and Western in the Complaint, both jointly and separately, arise from those dealings. It makes sense for those claims to be tried in one forum which is the reason Access and Western have filed them here where all parties are present. But if, as Defendants appear to argue, this Court determines this case is more appropriately before the District Court and this Court so recommends, both Western and Access would agree to litigate all of the claims in that forum as it makes no sense to litigate these claims separately.

The Bankruptcy Court is a unit of the Federal District Court in which it is located and its jurisdiction is determined by the jurisdiction of that Federal District Court.[1] Defendants do not dispute, in their motion, that the U.S. District Court for the District of Nevada (the "District Court") has jurisdiction over the claims asserted in this matter based on diversity of the parties. As such, there is no issue as to the jurisdiction of the District Court to hear Western's claims. Rather, the question is whether this matter is properly referred to the Bankruptcy Court pursuant to 28 U.S.C. § 157.

This matter is properly before the Bankruptcy Court. In addition to diversity, the District Court also has jurisdiction because Western's claims are related to the Access bankruptcy as the

---

[1] *Petrolia Corp. v. Elam,* 79 B.R. 686, 689 (Bankr. E.D. Mich. 1987); *In Re Coral Petroleum, Inc.,* B.R. 699, 702 (Bankr. S.D. Tex. 1986); 28 U.S.C. § 151 ("In each judicial district, the bankruptcy judges in regular active service shall constitute a unit of the district court . . . .")

"outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy" and "the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate."[2]  And even, if found not to be related, the District Court, and thereby the Bankruptcy Court, has jurisdiction over Western's claims based on ancillary jurisdiction as those claims derive from "a common nucleus of operative fact" as the claims asserted by Access and are "such that [a plaintiff] would ordinarily be expected to try them all in one judicial proceeding . . . ."[3]

The jurisdiction of the District Court is not disputed by Defendants motion, only the basis for that jurisdiction and whether the claims asserted are properly before the Bankruptcy Court.  As discussed below, Western believes these claims are properly before the Bankruptcy Court.

### RELEVANT FACTUAL BACKGROUND

The Complaint in this action asserts claims on behalf of Access and on behalf of Western. The Motion to Dismiss filed by all Defendants to this action, with the exception of Mr. Heilman, is directed to the claims of Western and based on an argument that the Court lacks subject matter jurisdiction over Western's claims.  The same Defendants who have moved to dismiss Western's claims have filed an Answer and Counterclaim with regard to the claims asserted by Access in this case.

The Complaint alleges subject matter jurisdiction under 28 U.S.C. § 1334 (Bankruptcy Cases and proceedings), under 28 U.S.C. § 1332(a) (Diversity Jurisdiction) and under 28 U.S.C. § 1367 (Ancillary Jurisdiction). Complaint ¶¶ 1 through 5.  Thus, the District Court is alleged to have jurisdiction over this matter alternatively under one or all of those statutes.  Defendants do not contest diversity jurisdiction under 28 U.S.C. § 1332(a) in their Motion.

---

[2] *Pacor, Inc. v. Higgins,* 743 F.2d 984, 994 (3rd Cir. 1984).
[3] *United Mine Workers v. Gibbs,* 383 U.S. 715, 725 (1966).

3

Western further alleges in its Complaint that this case is properly referred to the United States Bankruptcy Court for the District of Nevada pursuant to 28 U.S.C. § 157 and Local Rule 1001(b)(1); 28 U.S.C. §§ 157(b)(1), (b)(2)(A), (B), (C), (E), (F), (H), (K) and (O), 1334; and 11 U.S.C. §§ 554, 544, 548, 550 and 551.  Complaint ¶ 1.

As alleged in the Complaint, Access was for many years the general agent for Western pursuant to a General Agency Agreement, a copy of which is attached as Exhibit A.  Complaint ¶ 8. Within that relationship, Access and Western did business with LG Warranty from July 2006 through August 2011, bonding automobile warranty programs written, sold and/or administered by LG Warranty in Ohio and elsewhere.  *Id.* at ¶ 16.  In addition to bonding LG Warranty's warranty programs, Access and Western loaned money to LG Warranty, which debts are reflected in four promissory notes.  *Id.* at ¶ 16.  The first of those loans, reflected in a Promissory Note dated July 12, 2006 in the amount of $2,275,000, was a loan made collectively by Western and Access with Access funding $750,000 and Western funding $1,525,000.  *Id.* at ¶ 16.a.  Western and Access entered into a Participation Agreement with regard to that loan, a true and correct copy of which is attached as Exhibit B.  Access made another loan in the amount of $2,000,000 to LG Warranty reflected in a Promissory Note dated on or about July 31, 2008 and Western made two additional loans to LG Warranty reflected in Promissory Notes dated October 1, 2010 and November 3, 2010.  *Id.* at ¶¶ 16.b. and c.  The 2006 and 2008 Promissory Notes were both secured by Deeds of Trust to real property owned by Dale Holding, a company then owned by Defendants Lucas and Gouhin.  *Id.* at ¶ 16.  The 2010 Promissory Notes were secured by the pledge of 100% of the membership interests in Dale Holding.  *Id.* at ¶ 16.c.

At the request of LG Warranty, Dale Holding and Messrs. Lucas and Gouhin, on January 15, 2013 Access and Western entered into a Cooperation and Escrow Agreement ("Escrow Agreement") with all the Defendants to this action together with First American Title Insurance Company.  A true and correct copy of the Escrow Agreement is attached as Exhibit C.  *Id.* at ¶ 20.  The purpose of the

4

1  Escrow Agreement was to allow Dale Holding to sell certain real property, which secured the 2006
2  and 2008 Promissory Notes, and payoff first position debt and security interests in that property held
3  by Astar Finance Falcon I, LLC and other encumbrances on the property.  *Id.* at ¶ 20.a.  Under the
4  terms of the Escrow Agreement Access and Western maintained their security interests, which
5  transferred from the Dale Holding property to the proceeds held in escrow at First American Title
6  Insurance Company, to secure payment of the 2006, 2008 and 2010 Promissory Notes.  *Id.* at ¶ 20.b.
7  As of January 18, 2013, First American Title Insurance Company held $6,148,129.20 pursuant to the
8  Escrow Agreement.  *Id*. at ¶ 20.d.
9        With regard to LG Warranty's obligations under the 2006 and 2008 Notes, on or about
10 January 5, 2011, LG Warranty delivered a letter to Jeff Shaffer of Access Insurance Services, Inc. in
11 which Jeff Shaffer purportedly agreed on behalf of both Access and to deem satisfied all amounts
12 owed by LG Warranty under the 2006 and 2008 Promissory Notes.  *Id.* at ¶ 21.  As consideration for
13 the agreement by Access and Western to deem the over $4,000,000 owing on those Promissory Notes
14 to be satisfied, LG Warranty agreed to allow Western to exclusively underwrite its vehicle service
15 contract business through Access and Western.  *Id.*
16       Based on the foregoing facts, Access and Western assert 17 Claims for Relief.  The first of
17 those claims is a claim by Western for collection of the 2006 Promissory Note.  Although Access is a
18 participant in that loan, under the terms of the Participation Agreement, attached Exhibit B, Western
19 is responsible for taking action to recover on that Note.  The second claim is a claim on the guaranty
20 of Mr. Lucas and Mr. Gouhin of the 2006 Note.  The Third and Fourth Claims for Relief are claims
21 by Access for recovery on the 2008 Promissory Note.  The Fifth Claim for Relief is a claim by
22 Western for recovery on the 2010 Promissory Notes.
23       The first through fifth claims relate directly to the Sixth Claim for Relief, a claim for
24 declaratory relief asserted by Western and Access regarding the escrow proceeds held under the
25 Escrow Agreement, Exhibit C.  Under the terms of that agreement, to which Plaintiffs and
26 Defendants are the only parties, the approximately $6,100,000 held by First American Title is to be
27 distributed based upon the claims of the various parties to those funds.  Access makes claim to those
28

funds under the 2008 Promissory Note and Western, on behalf of itself and Access makes claims to those funds under the 2006 Promissory Note and 2010 Promissory Notes.

Under the Eighth Claim for Relief Access and Western seek turnover of the funds held in the First American Title Escrow as property rightfully belonging to Western and Access.

The Seventh Claim for Relief is the claim asserted by Access and Western seeking a determination that the signature on the January 5, 2011 letter is in fact a forgery and/or was procured by fraud. That January 5, 2011 letter obviously impacts both Western and Access under the 2006 and 2008 Promissory Notes. In addition to the Seventh Claim for Relief, Access and Western assert claims under the Tenth, Eleventh, Twelfth and Fourteenth Claims for Relief seeking to avoid any transfers that would have occurred, under several different theories, if the January 5, 2011 letter should be found not to be fraudulent.

As is evident from the foregoing, the claims asserted by Western and Access in the Complaint in this matter are interrelated as a result of their joint business relationship with LG Warranty and the other Defendants, their participation, along with the other parties to this action in the Escrow Agreement and because of the potential impact of January 5, 2011 letter on both of them. Thus, contrary to Defendants assertion, the claims of these two parties are inextricably intertwined and neither Access nor Western could bring their claims independently of one another.

## ARGUMENT

I. **The District Court for the District of Nevada has Subject Matter Jurisdiction Over the Claims Asserted by Western.**

In determining the subject matter jurisdiction of this Court, "'the proper focus . . . is on the District Court because the Bankruptcy Court is a unit of the District Court. 28 U.S.C. § 151.'" *Petrolia Corporation v. Elam,* 79 B.R. 686, 689 (Bankr. E.D. Mich. 1987)(*quoting In Re Coral Petroleum, Inc.,* B.R. 699, 702 (Bankr. S.D. Tex. 1986)); 28 U.S.C. § 151 ("In each judicial district, the bankruptcy judges in regular active service shall constitute a unit of the district court . . . ."). To the full extent of the District Court's jurisdiction, the District Court may refer matters to the Bankruptcy Court under and consistent with 28 U.S.C. § 157.

6

As alleged in the Complaint, and not disputed by Defendants in their Motion, the District Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 based on the diversity of the parties. It is undisputed that complete diversity exists and that the amount in controversy in this proceeding exceeds $75,000. Complaint ¶¶ 4 and 9-13; Heilman's Answer ¶ 11; Defendants' Answer ¶ 7. In light of those facts, the actual question raised by Defendants' Motion is not whether this action should be dismissed for lack of subject matter jurisdiction, but rather whether the referral of this action to the bankruptcy court pursuant to 28 U.S.C. § 157 was proper. Defendants, however, have not made that motion and, indeed, appear to have conceded that the claims asserted by Access in this proceeding, many of which are claims jointly made by Access and Western, are properly before the Bankruptcy Court.[4]

In light of the lack of any question as to the District Court's jurisdiction, counsel for Access and Western have proposed to simply stipulate to submit the issue of the propriety of the referral of this matter for the Court's determination and for all parties to abide by that decision. Thus far Defendants' counsel have not responded. Both Access and Western agree to pursue this case either here or in the District Court but both Plaintiffs agree that the claims belong in one court.[5]

In addition to jurisdiction based on diversity, Western alleges jurisdiction in the District Court pursuant to 28 U.S.C. §§ 1334 and 1367 and also alleges this case is properly referred to the Bankruptcy Court pursuant to 28 U.S.C. § 157. Whether or not properly referred to the Bankruptcy

---

[4] Defendants filed their Answer and Counterclaim to the claims asserted by Access on August 16, 2013. (Doc. 37) Pursuant to L.R. 5011: "A motion to withdraw the reference of an adversary proceeding, in whole or in part, must be served and filed on or before the date on which an answer, reply, or motion under Fed. R. Bankr. P. 7012 or 7015 is first due."

[5] Judge Du recently considered a request to withdraw the referral in *Rosenberg v. Brookstein*, 479 B.R. 585 (D. Nev. 2012). There the Court decided that although the matters referred could not be finally decided by the Bankruptcy Court, the Bankruptcy Court was not barred from hearing such matters and it was within the authority of the District Court to delegate such matters and for the Bankruptcy Court to provide its report and recommendation. *Id.* at 590; *see also, In re Lake at Las Vegas Joint Venture, LLC*, 2011 U.S. Dist. LEXIS 40827, Civ. No. 2:10-cv-1679, *10-11 (D. Nev. 2011).

7

Court unit of the District Court, there is no question Western's claims are properly before this District Court.

### A.     Defendants' Motion Under Federal Rule of Civil Procedure 12(b)(1).

In a motion filed pursuant to Federal Rule of Civil Procedure 12(b)(1), the first question is whether the motion is a facial or factual attack on the Court's subject matter jurisdiction. *Wolfe v. Strankman*, 392 F.3d 858, 362 (9th Cir. 2004); *Trenta Costa v. Frontier Pacific Aircraft Industries, Inc.,* 813 F.2d 1553, 1558-9 (9th Cir. 1986). In a factual challenge to jurisdiction: "Once a moving party has converted the motion to dismiss into a factual motion *by presenting affidavits or other evidence* properly brought before the court, the party opposing the motion must furnish affidavits or other evidence necessary to satisfy its burden of establishing subject matter jurisdiction." *Luu v. Ramparts, Inc.*, 2013 U.S. Dist. LEXIS 23712, No. 2:12-cv-00596-MMD-VCF, *4 (D. Nev. 2013) (emphasis added)(citing *Savage v. Glendale Union High Sch.*, 343 F.3d 1036, 1040 n.3 (9th Cir. 2003)).

> A Rule 12(b)(1 ) motion can be made as a speaking motion -- or factual attack -- *when the defendant submits evidence challenging the jurisdiction along with its motion to dismiss* (citations omitted). Once the moving party has converted the motion to dismiss into a factual motion by presenting affidavits or other evidence properly brought before the court, the party opposing the motion must furnish affidavits or other evidence necessary to satisfy its burden of establishing subject matter jurisdiction.

*Norkunas v. Wynn Las Vegas, LLC,* 2009 U.S. App. LEXIS 19240, Case No. 07-17159. *2 (9th Cir. 2009) (emphasis added)(citing *Savage,* 343 F.3d at 1039-40 n.2).

On the other hand, where the moving party does not present affidavits or other evidence and instead challenges only the allegations of the Complaint, "the court accepts as true all well-pleaded factual allegations, viewing them in a light most favorable to the non-moving party." *In Re VeraSun Energy Corp.,* 2013 Bankr. LEXIS 2634, Case No. 08-12606, *8 (Bankr. Del. 2013); *Jones v. City of Fresno,* 2013 U.S. Dist. LEXIS 29105, No. 1:12-CV-01797, *9 (E.D. Cal. 2013).

Defendants make no challenge to the jurisdiction of the District Court based on diversity, 28 U.S.C. § 1332. As such, it is clear that the District Court has subject matter jurisdiction. In addition, with regard to the District Court's jurisdiction under 28 U.S.C. § 1334, Defendants submitted no affidavits or other evidence properly before the Court in support of their Motion. Rather, Defendants challenge the nature of the claims asserted in this case and whether those claims support subject matter jurisdiction under 28 U.S.C. § 1334 as "related to" the Access bankruptcy. As such, the allegations of the Complaint must be taken as true for purposes of determination of this Motion.

Finally, in deciding this motion it must be remembered that "[a] motion to dismiss for lack of subject matter jurisdiction will be granted only if it is beyond doubt that the plaintiff cannot prove any set of facts which would demonstrate subject matter jurisdiction." *VeraSun Energy Corp.* at *8-9 (citing *Gould Elecs., Inc. v. U. S.,* 220 F.3d 169, 177 (3rd Cir. 2000)).

### B. The District Court for the District of Nevada also has Subject Matter Jurisdiction Pursuant to 28 U.S.C. § 1334.

In addition to diversity jurisdiction, the District Court also has jurisdiction over the claims asserted by Western pursuant to 28 U.S.C. §§ 1334(b) which provides: "[T]he district court shall have original but non-exclusive jurisdiction of all civil proceedings arising under Title 11, arising in or related to cases under Title 11."

Defendants, essentially assume that Western's claims do not arise under title 11 or in a case in title 11. Even agreeing with that assumption, however, there can be no doubt that the claims asserted are related to the Access bankruptcy.

> The usual articulation of the tests for determining whether a civil proceeding is related to bankruptcy is *whether the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy.* (Citations omitted) Thus, the proceeding need not necessarily be against the debtor or against the debtor's property. *An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate*.

*Pacor, Inc. v. Higgins,* 743 F.2d 984, 994 (3rd Cir. 1984)(emphasis added); *In Re Marcus Hook Dev.*

9

1 *Park, Inc.*, 943 F.2d 261 (3rd Cir. 1991)(holding that related to jurisdiction "will exist so long as it is possible that a proceeding may impact on 'the debtor's rights, liabilities'").

As discussed above, Western's First and Second Claims for Relief concern the 2006 Promissory Note under which LG Warranty owes over $2,000,000. The loan represented by that note was made jointly by Access and Western, as also alleged in the Complaint, pursuant to a Participation Agreement, which is attached hereto as Exhibit B. Although under the Participation Agreement Western is the party with authority to bring an action to collect on the Note, to the extent there is, or is not, recovery on that Note the outcome will have an effect on Access as it will, or will not, receive its share of that recovery under the Participation Agreement. It is difficult to conceive of a more related claim to this bankruptcy.

Further, the First through Fifth Claims for Relief, concerning the 2006 Promissory Note, the 2008 Promissory Note and the 2010 Promissory Notes, all relate directly to the Sixth and Eighth Claims for Relief, a claims jointly asserted by Access and Western. Under the Sixth Claim for Relief Access and Western seek a declaration of their respective rights and the rights of the Defendants, pursuant to the Escrow Agreement, a true and correct copy of which is attached as Exhibit C. The parties to that Escrow Agreement are the parties to this action, all of whom may assert rights to the $6.1 million held in escrow pursuant to that Agreement. Beyond the fact that the parties to this action are all necessary and indispensible parties to an action to determine rights under the Escrow Agreement,[6] Western's and the Defendants' claims "could conceivably have [an] effect on the estate being administered in bankruptcy." *Pacor*, 743 F.2d at 994. Indeed, it is inconceivable that a determination of rights under the Escrow Agreement could be made outside of this forum.[7]

Moreover, the Seventh, Ninth, Tenth and Eleventh Claims for Relief all relate to a January 5, 2011 letter, allegedly signed by Jeff Schaffer and purportedly releasing LG Warranty from liability on its Promissory Notes to both Access and Western. Those claims, asserted jointly by Access and

---

[6] Fed.R.Civ.P. 19; *Republic of the Philippines v. U.S. Dist. Ct. for the Dist. of Hawaii,* 309 F.3d 1143, 1152-53 (9th Cir. 2002)

[7] The Eighth Claim for Relief is a claim by Access and Western seeking turnover of the funds held by First American Title pursuant to the Escrow Agreement as property of Access and Western.

Western, challenge the authenticity of that letter and assert that, in any event, the purported release of liability under the Promissory Notes as of January 5, 2011 would constitute a fraudulent transfer from Access and Western to LG Warranty. To the extent it were to be found that Mr. Schaffer acted outside the authority granted Access under the Management Agreement, attached Exhibit A, the outcome of those claims could also give rise to a claim by Western against Access. Certainly, "the outcome [of those claims] could alter the debtor's rights, liabilities, options or freedom of action (either positively or negatively) and . . . [impact] upon the handling and administration of the bankrupt estate." *Pacor*, 743 F.2d at 994.

There is no doubt that the claims asserted by Western in this matter, both individually and jointly with Access, "could conceivably have any effect on the [Access] estate." *Id.* As such, this Court clearly has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b).

    **C.**    **Even if Westerns' Claims are not Related to the Access Bankruptcy, the District Court for the District of Nevada has Subject Matter Jurisdiction Pursuant to 28 U.S.C. § 1367.**

Even if no jurisdiction exists under 28 U.S.C. § 1334, the Court may exercise jurisdiction over Western's claims under 28 U.S.C. § 1367 as ancillary to the adversary claims asserted against these same Defendants by Access. Ancillary jurisdiction is given to the federal district courts under 28 U.S.C. § 1367.

> Under 28 U.S.C. § 1367, if a federal court has original jurisdiction over a civil action, it may exercise supplemental jurisdiction over state law claims that 'are so related to the claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.'

*Savage v. Glendale Union High Sch.*, 343 F.3d 1036, 1051 (9th Cir. 2003). "In determining whether there is ancillary jurisdiction over the claims of [the non-bankruptcy plaintiffs], 'the proper focus in determining the jurisdictional issue is on the district court because the bankruptcy court is a unit of the district court. 28 U.S.C. § 151.'" *In re Petrolia Corp. v. Elam*, 79 B.R. 686, 689 (Bankr. E.D. Mich. 1987)(quoting *In re Coral Petroleum, Inc.,* 62 B.R. 699, 702 (Bankr. S.D. Tex 1986)). If the claims derive from "a common nucleus of operative fact" and are "such that [a plaintiff] would

11

ordinarily be expected to try them all in one judicial proceeding, then . . . there is *power* in the federal courts to hear the whole." *Id.* at 690 (quoting *United Mine Workers v. Gibbs,* 383 U.S. 715, 725 (1966)).[8]  Where ancillary jurisdiction over claims exists in the District Court, the Bankruptcy Court may exercise that jurisdiction where the matter is referred by the District Court. *In re Petrolia Corp.* at 692-93; *In re Earl Roggenbuck Farms,* 51 B.R. 913, 925-26 (Bankr. E.D. Mich. 1985).

Federal jurisdiction exists as to the claims asserted by Access in this title 11 proceeding against these Defendants. *In re Coral Petroleum, Inc.,* 62 B.R. at 707-08. The claims asserted by Western and those asserted by Access, as discussed above, derive from "a common nucleus of operative fact" and are "such that [a plaintiff] would ordinarily be expected to try them all in one judicial proceeding . . ." *United Mine Workers,* 383 U.S. at 725. The intertwined relationship between Defendants, Western and Access is set forth in the Complaint. It is from that relationship, in which Western and Access, as its General Agent under the General Agency Agreement, had dealings with LG Warranty and the other Defendants that the claims asserted by Access and Western arise. Western and Access assert joint claims for declaratory relief and turnover concerning the property held under the Escrow Agreement, to which the Defendants are all the other parties. They also assert joint claims concerning the January 5, 2011 Shaffer letter, and the fraudulent transfers effected by that letter were it found to be non-fraudulent. Access also maintains a participation interest in the 2006 note that Western seeks to recover for both Access and Western. Certainly, these claims are "such that [a plaintiff] would ordinarily be expected to try them all in one judicial proceeding . . ." *United Mine Workers,* 383 U.S. at 725. As such, the Court may properly determine Western's claims as ancillary

---

[8] The bankruptcy laws do not impliedly negate federal jurisdiction to hear a state law claim ancillary to a claim related to a bankruptcy case. *Petrolia Corp.* 79 B.R. at 690-91. "The grant of concurrent jurisdiction over all civil proceedings arising under title 11, or arising in or related to a case under title 11 in section 1334(b), does not indicate an intent to preclude the exercise of pendant jurisdiction over causes of action related to these types of proceedings but on related to the debtor's estate." *In re Coral Petroleum*, 62 B. R. at 706-707.

to the claims asserted by Access over which the Court has federal jurisdiction.[9]

Moreover, the claims are such that interests of judicial economy, convenience and fairness favor the exercise of ancillary jurisdiction. While it may be true that the claims asserted by Western and Access *could* conceivably be asserted in state court, Access certainly cannot be compelled to file in another venue. In light of the fact this action is already commenced, that the Defendants have answered and counterclaimed against Access, and that defendant Heilman has answered the claims of Access and Western, certainly this action will be as quickly heard in this Court. In addition, the claims asserted require the Defendants to defend virtually identical claims arising from the same facts. The fact that Access and Western have agreed to bring these claims in one court is obviously the most convenient for everyone involved. Indeed, Defendants position that these closely related and overlapping claims should be brought in multiple courts makes little sense from any party's perspective.[10]

In *In re Petrolia Corp.,* the Bankruptcy Court for the Eastern District of Michigan considered the question of ancillary jurisdiction over state law claims asserted by two non-debtor plaintiffs the Court had found were not "related to" the bankruptcy of the debtor plaintiff. There the Court determined that the interests of judicial economy, convenience and fairness favored the exercise of ancillary jurisdiction in light of the overlapping issues, questioning the Defendants motivation in seeking to split up the claims to their own disadvantage. 79 B.R. at 694-95; *In re Coral Petroleum,*62 B.R. at 705-708 (finding ancillary jurisdiction over non-debtor, non-related claims following dismissal of claims against the debtor.) Assuming Western's claims are not related to and

---

[9] Indeed, the claims are such that the parties to this action are indispensible to the determination of this dispute. Fed. R. Civ. Proc. 19(a); *Republic of the Philippines v. U.S. Dist. Ct. for the Dist. of Hawaii,* 309 F.3d 1143, 1152-53 (9th Cir. 2002)(dismissing interpleader claims for failure to join all claimants under Fed. R. Civ. Proc. 19.)

[10] In fact, counsel for Access has informed all counsel that to the extent the Court finds Western's claims must be heard in the District Court instead of the Bankruptcy Court Access will stipulate to withdraw the reference as to its claims to this Court as well.

will have no effect whatsoever on the Access bankruptcy, this case amply qualifies for the exercise of ancillary jurisdiction.

## CONCLUSION

There is no question the District Court has jurisdiction over the claims asserted in the Complaint filed by Western and Access. Whether in this Court or in the District Court the claims asserted derive from a common set of facts and should be heard in one proceeding. Access and Western await the Court's determination as to the appropriate court in which to proceed and submit that, under any possible scenario, Defendants' Motion to Dismiss must be denied.

Dated this 8th day of October 2013.    VAN COTT BAGLEY CORNWALL & MCCARTHY, P.C.

 /s/ *Scott M. Lilja*
Scott M. Lilja, Esq.

Attorneys for Lennard W. Stillman as Special Deputy Liquidator for Western Insurance Company in Liquidation

4850-5232-1814, v. 2

14